UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HEIDI S.-V.,

        Plaintiff,

       v.                                          **DECISION AND ORDER**

                                                                           22-CV-919S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.      Plaintiff Heidi S.-V.[1] brings this action, pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.      On July 16, 2020, Plaintiff filed her second[2] application at issue here for Title II disability insurance benefits (R.[3] at 15, 256). There, she amended her onset date to March 2, 2019, the date of the initial unfavorable decision (R. at 15). She claimed severe impairments due to fibromyalgia; polycystic ovarian disease; chronic migraines without aura; cervical radiculopathy; lumbar spondylosis; depressive disorder; anxiety disorder; panic disorder; and post-traumatic stress disorder (R. at 18, 276). Plaintiff's

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

[2] Initially, Plaintiff applied for disability insurance and Supplemental Security Income benefits under Titles II and XVI of the Act. After denial of those applications by the Appeals Council on March 2, 2019, Plaintiff filed her second disability insurance benefits application under Title II.

[3] Citations to the underlying administrative record are designated as "R."

second application was denied and she thereafter requested a hearing before an administrative law judge ("ALJ").

3. On September 29, 2021, ALJ Jude Mulvey held a teleconference hearing (due to COVID) at which Plaintiff—represented by counsel—and Vocational Expert Margaret Heck appeared and testified. (R. at 15, 37-69.) As of this hearing, Plaintiff was a 30-year-old, with a high school education (R. at 29). Plaintiff had past relevant work the equivalent of a teacher's aide, tutor, medical receptionist, home health aide, and retail salesclerk (R. at 29).

4. The ALJ considered the case *de novo* and, on November 18, 2021, issued a written decision denying this Title II application. After the Appeals Council denied Plaintiff's request to review the ALJ's decision (R. at 1), she filed the current action, challenging the Commissioner's final decision.[4] (Docket No. 1.)

5. Plaintiff moved for summary judgment under Federal Rule of Civil Procedure 56 (Docket No. 7) and Defendant Commissioner moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (Docket No. 11). Plaintiff did not submit a reply. This Court takes these Motions[5] under advisement without oral argument. For the reasons that follow, Plaintiff's Motion will be granted and Defendant's Motion will be denied.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y

---

[4]The ALJ's November 18, 2021, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

[5]This Court will consider Plaintiff's Motion for Summary Judgment as a Motion for Judgment on the Pleadings under Rule 12(c), see, e.g., Wills v. Comm'r, No. 19-CV-428S, 2020 WL 502452, at *1 n.3 (W.D.N.Y. Jan. 31, 2020) (Skrenty, J.).

of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R.

§§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 2, 2019, the amended onset date. (R. at 18.) At Step Two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia, polycystic ovarian disease, chronic migraines, cervical radiculopathy, lumbar spondylosis, depressive disorder, anxiety disorder, panic disorder, post-traumatic stress disorder. (R. at 18.) At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19).

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work. The ALJ determines that Plaintiff can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; avoid working at unprotected heights, climbing ladders, ropes, or scaffolds, and working in proximity to dangerous machinery or moving mechanical parts of equipment. She would require the use of a cane for prolonged ambulation and walking on uneven terrain or ascending or descending slopes, but retains the ability to carry small objects, such as files, in her free hand. Plaintiff can tolerate no more than moderate levels of noise and should avoid work outdoors in bright sunshine and work with bright or flickering lights. She would require periodic breaks during the day which could be accommodated by the normal morning, lunch, and afternoon breaks. She can perform simple, routine, and repetitive tasks in a work

environment free of fast-paced production requirements, involving only simple, work-related decisions and few, if any, workplace changes.  Finally, Plaintiff can tolerate a low level of work pressure.  (R. at 22-23.)

13. At Step Four, the ALJ found Plaintiff is unable to perform any past relevant work.  (R. at 29.)  At Step Five, however, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Finding that Plaintiff could not perform all or substantially all the requirements for sedentary work, the ALJ asked the vocational expert what jobs a hypothetical claimant like Plaintiff with her age, education, and work experience could perform.  The Vocational Expert opined that this claimant could perform as a document preparer, ticket checker, or addresser.  (R. at 30.)  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 30-31.)

14. Plaintiff's objection is to the ALJ's conclusion that Plaintiff "requires the use of a cane for prolonged ambulation and walking on uneven terrain or ascending or descending slopes, but retains the ability to carry small objects, such as files, in her free hand."  She argues that this limitation for "prolonged" ambulation and walking on specific terrain are not supported by substantial evidence.  She retorts with evidence (see R. at 579, 627, 638, 568, 662) suggesting her constant need for her cane, concluding that the ALJ's inclusion of qualifiers is harmful error because it appears to restrict her use of a cane rather than acknowledge her constant need.  Further, she complains that the ALJ compounded this error by including the qualifiers in his hypothetical to the Vocational Expert (R. at 66).

15. For the reasons that follow, this Court finds that the RFC finding qualifying that the need for handheld assistive device was required for only "prolonged ambulation"

6

was not supported by substantial evidence.  As such the determination by the ALJ of no disability is erroneous.

16. Plaintiff bears the burden of establishing the medical necessity for a cane or assistive device, <u>Vanever v. Berryhill</u>, No. 16-CV-1034, 2018 WL 4266058, at *2 (W.D.N.Y. Sept. 6, 2018); <u>see</u> <u>Feringa v. Colvin</u>, No. 5:15-CV-785 (LEK/CFH), 2016 WL 5417403, at *6-7 (N.D.N.Y. Sept. 9, 2016).  Once medical need is established, the ALJ must incorporate that device into the RFC, <u>Vanever</u>, <u>supra</u>, 2018 WL 4266058, at *2.

17. This Court finds that, while the ALJ incorporated the use of a cane in the RFC, the ALJ improperly limited use of that device to prolonged ambulation and walking on uneven terrain or slopes (R. at 22).  The ALJ lacks substantial evidence for these qualifiers.

18. Plaintiff's treatment record outlined below shows the prescribed use of her cane to alleviate pain without qualification and that Plaintiff followed that prescription. This Court concludes there is not substantial evidence for the ALJ's qualifying use of her cane to just prolonged walking or on uneven terrain.

19. On November 3, 2017, Plaintiff told her treating physician, Dr. Ashraf Henry of Dent Neurologic Institute, that her pain was worse when she stood for a long time and when walking for long distance.  Dr. Henry found that Plaintiff used a cane occasionally due to her leg pain.  (R. at 504, 506; <u>see</u> R. at 24).

20. On April 10, 2018, Nurse Practitioner Maral Soufleris of Dent Neurologic Institute examined Plaintiff and noted her unsteady gait and continued use of a cane (R. at 484, 24).

21. On October 1, 2018, Ms. Soufleris again assessed Plaintiff with an unsteady gait requiring the use of a can to avoid falls and further injury (R. at 651).

22. On February 18, 2019, Dr. Henry noted that Plaintiff rated her pain 10 on a 0-10 scale, worsening when she stood for a long time or walking great distances. Plaintiff had a history of falling and used a cane due to leg pain. (R. at 577, 578.) Dr. Henry concluded that Plaintiff needed a cane "all the time during walking to avoid any risk of falling and injuries" (R. at 579).

23. On February 19, 2019, P.A. Colleen Lemankiewicz of UBMD Physicians' Group examined Plaintiff and observed her abnormal gait and her use of a cane because of right ankle pain (R. at 594, 24).

24. On May 6, 2019, Ms. Soufleris re-evaluated Plaintiff and, noting her continued unsteady gait, recommended "always using [a cane] to avoid any falls and further injury" (R. at 638, 24). On August 21, 2019, Ms. Soufleris repeated this assessment and recommendation (R. at 565).

25. On October 19, 2020, Dr. Henry reevaluated Plaintiff and observed that Plaintiff still walked with a cane "due to the history of unsteadiness, the patient needs to use a cane all the time during walking to avoid any risk of falling" (R. at 627).

26. On June 18, 2021, Nurse Practitioner Olia Golimowski of Dent Neurologic Institute examined Plaintiff and Plaintiff reported that her pain (at level of 9 to 10 on a 10-scale) was aggravated by different activities such as prolonged walking (R. at 749, 24). While she had not fallen in the past year, Plaintiff felt unsteady walking or standing (R. at 750). Ms. Golimowski observed that Plaintiff's gait was unremarkable with a cane while her strength was normal (R. at 751, 24).

27. Plaintiff's medical history from 2017 indicates that she had fallen (R. at 582, 24) and Dr. Henry noted her history of falling (R. at 577, 625). Treating sources advised Plaintiff to continue using her cane to avoid falls (e.g., R. at 638, 651) although her examinations uniformly found that her gait was unremarkable with her cane and she had normal strength in her lower extremities (e.g., R. at 751, 664, 24).

28. The ALJ, however, found somewhat persuasive the consultative examination of Dr. Najiib Azad (R. at 24, 28), incorporating the doctor's opinion as to cane usage (R. at 24, 22). On December 8, 2020, Dr. Azad examined Plaintiff and observed during the examination her limp on her left leg with and without a cane, that she did not require assistance changing or getting on or off the examination table, and that she could rise from a chair without difficulty (R. at 24, 662). Dr. Azad observed Plaintiff using her cane and acknowledged that she does it primarily for pain and when she was outdoors but would benefit using the cane to prevent her legs from collapsing (R. at 24, 28, 662).

29. While the "use of a cane or walker to aid in ambulation is not inconsistent with an RFC of sedentary work," Stover v. Saul, No. 18-CV-404-MJR, 2020 WL 897411, at *5 (W.D.N.Y. Feb. 25, 2020), an individual who uses a medically required cane or hand-held assistive device in one hand (like Plaintiff) may perform minimal lifting and carrying requirements for many sedentary occupations with the non-cane bearing hand, SSR 96-9p, 1996 WL 374185, at *7. The Social Security Administration observes that a claimant requiring a cane to reduce pain while walking, who is limited to sedentary work, and who has no other functional limitations or restrictions may still adjust to sedentary work that the agency found exist in significant numbers, id. But when another claimant needs to

use such a device for neurological impairment and to retain balance, that claimant's occupational base may be significantly eroded, id.

30. The ALJ, however, has not found whether Plaintiff needs her cane for pain reduction or due to a neurological impairment and for balance. Resolution of this issue may determine if Plaintiff could perform any sedentary work.

31. Furthermore, this Court finds that the ALJ harmfully erred in qualifying Plaintiff's use of her cane because those qualifiers were presented to the Vocational Expert to identify jobs a hypothetical claimant like Plaintiff (who only occasionally uses a cane) could perform, including jobs that Plaintiff with her constant cane use could not perform. The Expert was not presented with a hypothetical of a claimant who continuously required use of a cane.

32. On remand, the ALJ shall determine the nature of Plaintiff's required use of her cane. If the ALJ concludes after this analysis that Plaintiff still can perform some form of sedentary work, the ALJ then shall determine the extent of the erosion (if any) of Plaintiff's occupational base to perform sedentary work because of her constant use of her cane.

33. This Court concludes that Plaintiff's motion is granted, Defendant's Motion for Judgment on the Pleadings is denied, and this case is remanded.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Summary Judgment on the Pleadings (Docket No. 7), here deemed a Motion for Judgment on the Pleadings, is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:     February 16, 2024
               Buffalo, New York

                                                <u>s/William M. Skretny</u>
                                                WILLIAM M. SKRETNY
                                                United States District Judge